William M. BELITSKUS, Appellant,

v.

HAMLIN TOWNSHIP, a Pennsylvania Township, and William Kilmer, Richard Keesler, Thomas Kreiner, Eric Ross, Esq., Woods and Baker, in their official capacity.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 12, 2000.
Decided Dec. 18, 2000.

William M. Belitskus, appellant, pro se.

G. Jay Habas, Erie, for appellee.

Before PELLEGRINI and
FLAHERTY, Judges, and McCLOSKEY,
Senior Judge.

FLAHERTY, Judge.

William M. Belitskus, pro se, appeals from an order of the Court of Common Pleas of McKean County (trial court), which sustained the preliminary objections filed by the Hamlin Township Supervisors (Supervisors) in response to a complaint filed by Belitskus, wherein he alleged that the Township took official action in violation of the Sunshine Act, 65 Pa.C.S. §§ 701–716. We affirm.

■ In his complaint, Belitskus maintains that the Supervisors violated the Sunshine Act by taking official action outside of an open meeting by sending a letter on June 4, 1999, to the McKean County Commissioners recommending that they reappoint Brain Sees to the McKean County Solid Waste Authority. Belitskus also maintains that the Supervisors violated the Sunshine Act by taking official action outside of an open meeting when it

planned a meeting with Hazel Hurst Water Association and the McKean County Redevelopment Authority which occurred on July 19, 1999. In response to the complaint, Supervisors filed preliminary objections which the trial court granted finding that the events complained of did not amount to official action. For the reasons that follow, we agree with the trial court that the actions taken by the Supervisors did not amount to official action as defined by the Sunshine Act.[1]

■ Initially, Belitskus argues that the Supervisors took official action on agency business by recommending that Sees be reappointed to the McKean County Solid Waste Authority. Before addressing the merits of this argument we must first determine whether Belitskus failed to initiate this action in a timely manner as alleged in Supervisor's preliminary objections because failure to initiate this action within the statutory limitations of 65 Pa. C.S. § 713 would bar jurisdiction by the trial court. *Lawrence County v. Brenner,* 135 Pa.Cmwlth. 619, 582 A.2d 79 (1990), *petition for allowance of appeal denied,* 527 Pa. 652, 593 A.2d 423 (1991). In accordance with 65 Pa.C.S. § 713:

A legal challenge under this chapter shall be filed within 30 days from the date of a meeting which is open, or within 30 days from the discovery of any action that occurred at a meeting which was not open at which the chapter was violated, provided that, in the case of a meeting which was not open, no legal challenge may be commenced more than one year from the date of said meeting.

Because Belitskus alleged "improper official activity at a meeting which was not open to the public, he was obligated to bring the action within thirty days of his discovery of the alleged improprieties."

---

1. When this court reviews a trial court's order sustaining a preliminary objection in the nature of a demurrer, we must determine whether the trial court abused its discretion or committed an error of law. *Bologna v. St. Marys Area School Board,* 699 A.2d 831 (Pa.

Cmwlth.1997). In a challenge to sustaining preliminary objections in the nature of a demurer we are to determine whether on the facts alleged the law states with certainty that no recovery is possible. *Thomas v. Township of Cherry,* 722 A.2d 1150 (Pa.Cmwlth.1999).

*Id.* at 82.[2] Here, in his complaint, Belitskus references a June 29, 1999 article in the *Kane Republican*, which stated that the Supervisors sent a letter to the McKean County Solid Waste Authority requesting that Sees be reappointed to the McKean County Solid Waste Authority. (Belitskus complaint at ¶ 14).[3] Because Belitskus discovered the impropriety on June 29, 1999, he had 30 days from that date to file his complaint. Belitskus however did not file his complaint until August 10, 1999, which is beyond the thirty day statutory limitation from the date when he discovered the alleged impropriety. As such, Belitskus' action with respect to the Sees letter of recommendation was not timely and the trial court did not have jurisdiction over this matter.[4]

■ With respect to the July 19, 1999 meeting between the Supervisors, the Hazel Hurst Water Association and the McKean County Redevelopment Authority, Belitskus maintains that the Supervisors took "official action" in violation of the open meeting requirements of the Sunshine Act and requested a meeting with the Hazel Hurst Water Association, McKean County Redevelopment Authority, Department of Environmental Protection and Pennvest. (Belitskus complaint at ¶ 21, R.R. at 9a.)

In accordance with 65 Pa.C.S. § 704 "[o]fficial action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public unless closed under section 707 (relating to exceptions to open meetings), 708 (relating to executive sessions) or 712 (relating to General Assembly meetings covered)." The relevant terms in this case are defined in 65 Pa. C.S. § 703 of the Act as follows:

"Agency business." The framing, preparation, making or enactment of laws, policy or regulations, the creation of liability by contract or otherwise or the adjudication of rights, duties and responsibilities, but not including administrative action.

"Deliberation." The discussion of agency business held for the purpose of making a decision.

"Official action."

(1) Recommendations made by an agency pursuant to statute, ordinance, or executive order.

(2) The establishment of policy by an agency.

(3) The decisions on agency business made by an agency.

(4) The vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order.

We agree with the trial court that setting up the meeting or attending the meeting did not constitute official action. Although Belitskus emphasizes that the Supervisors in a joint action with the Ha-

2. Although *Brenner* was decided before the new consolidated version of the Sunshine Act took effect on December 14, 1998, the language with respect to when a legal challenge must be commenced remained the same. Specifically, prior to the 1998 version former Section 13 of the Sunshine Act, Act of July 3, 1986, P.L. 388, 65 P.S. § 283 provided:

A legal challenge under this act shall be filed within 30 days from the date of a meeting which is open, or within 30 days from the discovery of any action that occurred at a meeting which was not open at which the act was violated, provided that, in the case of a meeting which was not open, no legal challenge may be commenced more than one year form the date of said meeting.

3. Belitskus also makes reference to a June 28, 1999 regularly scheduled meeting of the McKean County Commissioners. At that meeting, "supervisor Kilmer, officially representing Hamlin Township, 'presented three letters to the commissioners, one each from Hamlin Township, Sergeant Township, and Mt. Jewett Borough, requesting that Brain Sees, a Hamlin Township resident be reappointed to the McKean County Solid Waste Authority.'" (Belitskus complaint at ¶ 14.)

4. This court may affirm on other grounds where grounds for affirmance exist. *Karl Smith Development Co. v. Borough of Aspinwall*, 125 Pa.Cmwlth. 687, 558 A.2d 181 (1989), *petition for allowance of appeal denied*, 525 Pa. 614, 577 A.2d 545 (1990).

zel Hurst Water Association and DEP set up the meeting as is evidenced by a letter dated July 14, 1999 from the McKean County Redevelopment Authority, (Belitskus complaint, ¶ 21, R.R. 9a and Exhibit 7a, R.R. 28a), the letter also confirms that the purpose of the meeting concerned not the Supervisors but the Hazel Hurst Water Association. The letter states that "[t]he meeting on July 19, 1999 was called to bring the re-organized [Hazel Hurst] Water Association up-to-date on the Pennvest financing and the recent audit of the project. The Association, as a whole, wanted a status report of where they stand with the loan closing. The meeting is a private meeting so that the Association officers can discuss the financing with Pennvest and DEP representatives." (R.R. at 28a). Thus, the meeting concerned business of the Hazel Hurst Water Association and not that of the Supervisors. In setting up the meeting and attending the meeting, the Supervisors did not enact any law, policy or regulation, did not create any liability under contract and did not adjudicate any rights, duties or responsibilities.

▮ Furthermore, we do not agree with Belitskus' argument that the trial court judge, in violation of the legislature's intent, erred in too narrowly defining what types of actions constitute "official action." Although official actions must be conducted in open meetings, "the Sunshine Act does not require agency members to inquire, question and learn about agency issues only at an open meeting." *Sovich v. Shaughnessy*, 705 A.2d 942, 945–946 (Pa. Cmwlth.1998). In *Conners v. West Greene School District*, 131 Pa.Cmwlth. 95, 569 A.2d 978 (1989), *petition for allowance of appeal denied*, 525 Pa. 649, 581 A.2d 574 (1990), this court addressed the situation wherein a taxpayer alleged a violation of the Sunshine Act because school board members allegedly privately discussed the adoption of the school district's budget. This court observed that such a meeting did not constitute an executive session as it

did not fit within the requirements and also did not constitute an official action. This court reasoned that even though the board members may have discussed the budget, the Sunshine Act "does not prohibit a member from inquiring, questioning and learning about the budget and other school issues only at a public meeting." *Id.* at 983.

In this case, the Supervisors did not take official action outside of an open meeting and in accordance with the above, the order of the trial court is affirmed.

### *ORDER*

NOW, December 18, 2000, the order of the Court of Common Pleas of McKean County at No. 884 C.D.1999, dated November 10, 1999, is affirmed.