814 A.2d 750 (2002)
D.N., Appellant
v.
V.B., Appellee.
Superior Court of Pennsylvania.
Argued December 5, 2002.
Filed December 31, 2002.
*751 Anthony J. Zanoni, Hollidaysburg, for appellant.
Edward E. Zang, Altoona, for appellee.
Before: HUDOCK, TODD and GRACI, JJ.
HUDOCK, J.:
¶ 1 D.N. appeals from the order that dismissed her complaint for custody of her half-sister, G.B., and half-brother, J.B., on the basis that she lacked standing to proceed with the action. We affirm.
¶ 2 V.B. (Mother) and F.G. (Father) are the natural parents of J.B., born December 31, 1990, and G.B., born March 17, 1994.[1] At the time of Mother and Father's relationship, Father was married to L.G. and had two adult daughters, D.N. and M.K. During the course of the relationship, Mother lived intermittently with Father, his wife, and children. When Mother permanently relocated from Father's home with J.B. and G.B., Father filed a custody action in the Court of Common Pleas of Blair County at No. 97 GN 4685, which resulted in Mother retaining primary custody of the children and Father being awarded partial custody. This arrangement continued until Mother and Father entered into a consent order of custody in May 2001, wherein the parties agreed that Father would have primary physical custody of the children, and Mother would have partial custody. While Father's adult children, D.N. and M.K., no longer resided at the residence, they interacted with their half-siblings and developed relationships with them while they were in Father's care.
¶ 3 In 2002, Father was hospitalized due to a serious medical condition at which time J.B. and G.B. returned to live with Mother. Father died April 20, 2002. On May 29, 2002, D.N. filed a complaint seeking the custody of J.B. and G.B., alleging improprieties of Mother that purportedly impact negatively upon the children's welfare. Subsequently, D.N. filed an amended complaint. Thereafter, Mother filed preliminary objections to the amended complaint challenging D.N.'s standing to initiate such an action. On June 26, 2002, the court sustained the preliminary objections and dismissed the amended complaint for custody. The court reasoned that, "on its face the complaint clearly demonstrates that [D.N.] is without standing to prosecute this custody action." Order, 6/26/02, at 1-2. This timely appeal followed.
¶ 4 On appeal, D.N. presents the sole issue of "[w]hether the trial court committed an abuse of discretion and an error of law in sustaining preliminary objections in the nature of a demurrer and dismissing a complaint for custody filed by an adult half-sibling under the circumstances of the particular situation in which the subject children find themselves?" D.N.'s Brief at 4.
¶ 5 When reviewing the dismissal of a complaint based upon preliminary objections in the nature of a demurrer, we treat as true all well-pleaded material, factual averments and all inferences fairly deducible therefrom. DeMary v. Latrobe Printing and Publishing Company, 762 A.2d 758, 761 (Pa.Super.2000) (en banc), appeal denied, 567 Pa. 725, 786 A.2d 988 (2001). Where the preliminary objections will result in the dismissal of the action, the objections may be sustained only in cases that are clear and free from doubt. *752 Marks v. Nationwide Insurance Company, 762 A.2d 1098, 1099 (Pa.Super.2000), appeal denied, 567 Pa. 751, 788 A.2d 381 (2001). "To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred." Id. (citation omitted). "Any doubt should be resolved by a refusal to sustain the objections." DeMary, 762 A.2d at 761. Moreover, "[w]e review the trial court's decision for an abuse of discretion or an error of law." Id.
¶ 6 D.N. acknowledges that, although the legislature has provided for a grandparent to seek custody or visitation of a minor grandchild when their child, the minor grandchild's parent, is deceased or becomes divorced from the other parent, the grandchild is declared dependent or when it is not in the best interest of the grandchild to be in the custody of either parent, the statute does not expressly provide an adult sibling the same rights. See generally 23 Pa.C.S.A. §§ 5311-5313. D.N. further concedes that the appellate courts have interpreted the custody statutes as not including such rights for an adult sibling. See Ken R., on behalf of C.R. v. Arthur Z., 546 Pa. 49, 682 A.2d 1267 (1996) (holding that a sibling does not have standing to seek a court ordered visitation with a minor sibling; siblings are not listed among those with statutory standing to seek visitation); Weber v. Weber, 362 Pa.Super. 262, 524 A.2d 498 (1987) (finding that sibling relationship failed to give rise to a legal right to seek partial custody). Nonetheless, she maintains that the legislature and the appellate courts did not intend to preclude standing to an adult sibling when one natural parent is deceased, all applicable grandparents are deceased and the living custodial parent is participating in conduct or activities which have a significant negative impact on the minor children. Specifically, in her complaint D.N. contends that the best interest and permanent welfare of J.B. and G.B. would be served by granting her custody because:
a. [She] is better able to provide for the children's physical, emotional, and mental well-being;
b. [Mother] has historically exhibited an inability to provide adequate care and supervision to the children, especially when she is required to parent all of her children at once;
c. [Mother] has demonstrated a willingness to experiment and/or to abuse alcohol and narcotics, having received emergency medical care as a result of an overdose;
d. [Mother] continues to be regularly and intimately [sic] with a paramour who was the facilitator in her problems with narcotics;
e. [Mother] is borderline mentally retarded and is unable to assist the children in their growing educational demands;
f. [Mother] is without sufficient residential facilities to provide adequately for the children's needs;
g. [Mother] has been involved in criminal activity and is an unlikely resource for the children;
h. [She] and the children (as well as the paternal family, generally) have developed a strong bond upon which they depend that will allow for an easy transition, should [her] custody claim prevail;
i. Since [Father's] death, [Mother] has made efforts to insulate the children from having any contact with [her] and [M.K.], notwithstanding the latter parties' familial relationship with a common father, including but not limited to denying any contact between them.
*753 Amended Complaint, ¶ 11. Thus, D.N. concludes that because the general welfare of the children is at issue, her case is distinguishable from Ken R., supra, and Weber, supra, wherein the children's welfare was not in question. Accordingly, she maintains that the precedent set forth in those cases shall not control the disposition of the present case. Instead, D.N. likens her case to the cases of T.B. v. L.R.M., 567 Pa. 222, 786 A.2d 913 (2001), and Albright v. Commonwealth ex rel. Fetters, 491 Pa. 320, 421 A.2d 157 (1980). She asserts that our Supreme Court, in those cases, notwithstanding the custody statutes, recognized the continued application of common law principles in custody cases, finding that "there exists a basis for third parties, including half-siblings, to contest custody against a natural parent when circumstances are clear and convincing that the best interest of the subject children would be served by granting the third party custody rights." D.N.'s Brief at 14. D.N. posits that this is such a case. We disagree.
¶ 7 While D.N. correctly notes that our appellate courts have held that third parties may be awarded custody of a minor child over a natural parent when it would be in the best interest of the child, D.N. overlooks that a third party must first have standing to initiate the custody action. Our courts "generally find standing in third-party visitation and custody cases only where the legislature specifically authorizes the cause of action" or "where that party stands in loco parentis to the child." T.B., 567 Pa. at 228, 786 A.2d at 916. In T.B. and Albright, the third parties seeking custody stood in loco parentis to the children at issue. In the present case, D.N. does not allege in her complaint, nor does she argue in her brief on appeal, that she satisfies the requirements necessary for the assumption of in loco parentis status. Likewise, D.N. does not contend that she is bestowed standing by statute. Thus, D.N.'s reliance on the cases of T.B. and Albright is misplaced.
¶ 8 We similarly reject D.N.'s alternative argument that she should be afforded standing to seek at least a more limited form of custody, i.e. partial custody or visitation, because at the time of her father's death there were no grandparents to file a custody action on behalf of the paternal side of the family. She argues that:
[she is] more than just a half-sibling of the children, [she] represents a significant connection between the children and the paternal family members surviving the death of their natural father. In lieu of grandparents or great grandparents, the subject minor children's only contact with the paternal family must be through the lineage of [D.N.] as a paternal half-sibling. It is respectfully submitted that the unique circumstances of the case at bar weigh in favor of finding that [D.N.] does have standing to bring a custody action (albeit, for partial custody or visitation) pursuant to common law principles and a reasonable extension (or exception) to the provisions of 23 Pa.C.S.A. Section 5311 [which provides standing to grandparents to petition the court for partial custody or visitation of their grandchildren when their child is deceased].
D.N.'s Brief at 16-17. While D.N.'s argument is appealing, our Supreme Court has clearly stated that "where the legislature has enacted a specific statute addressing custody and visitation and has not included rights of children to seek court ordered [custody] or visitation with siblings," we are bound to follow the legislature's directive and may not include persons not explicitly pronounced. Ken R., 546 Pa. at 57, 682 A.2d at 1271. Accordingly, we find that D.N., as a half-sibling, has no legal standing to seek custody, partial custody *754 or visitation with her minor siblings and, as such, we affirm the trial court's dismissal of the complaint for custody.
¶ 9 Order affirmed.
NOTES
[1] Mother also has three other minor children whose custody is not at issue in this proceeding.